Filed 8/4/26  Tilakamonkul v. Tilakamonkul CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| VICHIT TILAKAMONKUL et al., | B334396 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC715362) |
| v. | |
| VICHAI TILAKAMONKUL et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed.

Law Offices of Andrew D. Weiss and Andrew D. Weiss for Defendants and Appellants.

Law Offices of James T. Stroud and James T. Stroud for Plaintiffs and Respondents.

———————————

Family members who operated a collection of California-based Thai restaurants disagreed about who amongst them was still an owner of their business enterprise and could lay claim to its assets. The consensus was that two of seven brothers, Vichit and Somsak Tilakamonkul, had been ousted. When Vichit and Somsak sued, however, the trial court decreed that each of the seven brothers, Vichit and Somsak included, owned an equal share and had an equal interest in several real properties. The trial court also declined to deprive Vichit and Somsak of their interests under the doctrine of unclean hands. On appeal, there is no challenge to the trial court's initial finding of seven-way ownership but, instead, a challenge to its rejection of an unclean hands defense. We affirm.

## I.

In 2018, when Vichit and Somsak felt they were being unduly treated as non-owners of their family's business, they sought relief in court. Vichit sued first. He claimed to be in partnership with his relatives and sought damages and an equal, seven-way partition of partnership property. Somsak then filed a similar, now consolidated, action.

The operative Second Amended Complaint in the consolidated action named both Vichit and Somsak as plaintiffs and named as defendants their five other brothers — Vichai, Virut, Pramorte, Narlong, and Sumeth — as well as several entities related to the family business. The complaint, as relevant here, sought to quiet title to the alleged partnership's assets, including real properties known as Ransom and Mt. Bigelow. The answers of four of the defendant brothers and of the entities each raised the defense of unclean hands. Pramorte's

2

separate answer suggested he sided with Vichit and Somsak insofar as they sought an equal division of the family business.

The trial court held a bench trial spanning more than a week on the quiet title cause of action and other equitable matters. By then, the parties had stipulated to a sale of the contested real properties, so the issue at trial, as to those properties, was who would receive what proceeds. The court heard evidence about a $200,000 payment to Vichit in 2007. Vichit claimed it was a loan; defendants claimed it was a buyout that ousted him from the family business. The court also heard evidence about Somsak's wife allegedly embezzling over $1 million from one of the family's corporate restaurant entities, RT IV. Somsak claimed this resulted in a resolution short of termination of his ownership interest; the defendants disagreed. The court additionally heard evidence about how family-related property was held and whether and to what extent family members were acting as partners or acting through various corporate forms.

Evidence regarding Vichit's ownership status included tax documents. Starting with the 2010 tax year, three years after the supposed buyout, Vichit successfully requested to be left off family business tax documents. Defendants believed this showed relinquishment of ownership, but Vichit testified the tax returns were reporting "phantom," undistributed income on which he could not afford taxes and which would disqualify him from public benefits.

Defendants' trial brief fleshed out their unclean hands defense. They asserted the defense "disqualifie[d]" plaintiffs "from seeking equitable relief." Defendants pointed to Vichit's request to stop receiving tax documents that would have shown

3

income to him from the family business. This, they said, was to "defraud the State of California and receive public assistance." Somsak, argued defendants, had unclean hands because of his wife's theft of funds from "corporate bank accounts" of the family business.

After trial, the court, in late 2022, issued a thirty-one-page statement of decision.

The trial court first found Vichit and Somsak proved "by clear and convincing evidence . . . that each Tilakamonkul brother, including each Plaintiff, owns a one-seventh beneficial interest in the Mt. Bigelow and Ransom properties." The court then found Vichit and Somsak had not been ousted from their ownership interests in the family business, including these properties. Vichit had not been bought out; the $200,000 payment in 2007 was a loan. As to Somsak, "ample evidence was offered to substantiate Defendants' contention that [his wife] embezzled substantial funds from RT IV and that Defendants were irate." But while Somsak might have been terminated as an employee of one of the family's corporate entities in 2014, he was still an owner. The court buttressed its conclusion by noting a 2016 lawsuit that a family entity had filed against Somsak after the alleged embezzlement and after he had claimed "sole ownership" of the Ransom properties. The lawsuit's complaint acknowledged Somsak's claim of "sole ownership," which was incompatible with defendants' claim that Somsak had given up his rights, and the lawsuit's settlement resulted in a transfer of the deed that "preserve[d] his arguments of joint ownership."

The trial court also rejected defendants' assertion that the doctrine of unclean hands barred both plaintiffs' claims. In an earlier proposed decision, the trial court had given specific

4

reasons for rejecting unclean hands as to Vichit but had not similarly given specific reasons as to Somsak. Defendants objected to the proposed decision's unclean hands analysis, but addressed only Vichit. Defendants argued nothing further as to Somsak. The statement of decision ultimately reasoned unclean hands could not apply to Vichit because his alleged misconduct — his request to be excluded from certain family business tax returns in 2010 — was unconnected to the parties' dispute over whether he had been bought out.

In a later, 2023 ruling that is neither mentioned nor challenged on appeal, the trial court declined the individual brothers' request to offset awards coming to Vichit and Somsak as a result of the 2007 loan or the alleged embezzlement. (See generally *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 195 [discussing the separate defense of offset].) As to the alleged embezzlement, the court concluded the victim of the embezzlement was RT IV, a corporate entity, not the individual brothers.

A judgment decreed Vichit, Somsak, and each of the brothers should receive one-seventh of the proceeds from the sale of the Ransom and Mt. Bigelow properties. Vichai, Virut, Sumeth, Narlong, and one of the family entities, T-Team Investment, LLC, appealed.

## II.

Appellants argue the trial court erroneously declined to apply the defense of unclean hands to bar the quiet title claims that Vichit and Somsak brought as to the Ransom and Mt. Bigelow properties.

One who has unclean hands cannot seek equity from the courts. (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110.)

5

"The doctrine of unclean hands is a defense to an equitable action, including an action to quiet title." (*Ibid.*) "Not all wrongful conduct constitutes unclean hands. Only if the misconduct is directly related to the cause at issue can a defendant invoke the doctrine." (*Ibid.*) " 'Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries.' " (*Ibid.*) "Relief is not denied because the plaintiff may have acted improperly in the past or because such prior misconduct may indirectly affect the problem before the court." (*Treager v. Friedman* (1947) 79 Cal.App.2d 151, 173.)

We review legal questions regarding the application of unclean hands de novo, but we review factual questions, such as those regarding the nature of the misconduct and its relationship to the claimed injuries, for substantial evidence. (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 437–438.) "Moreover, the decision whether to apply the defense based on the facts presented is a matter within the trial court's discretion." (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.)

We address the unclean hands defense as to each plaintiff.

## A.

Unclean hands did not disqualify Vichit from seeking to quiet title.

As to Vichit, appellants' unclean hands theory arises from Vichit, contrary to how an owner might act, asking his relatives to exclude him from tax forms that would have shown income to him from the family business. Appellants assert Vichit was "defrauding the State of California in order to obtain public assistance, or defrauding his brothers and the State and Federal

6

tax authorities by requiring his brothers shoulder the tax burden of the income earned by the family businesses."

The trial court concluded Vichit's alleged tax misconduct was insufficiently related to his quiet title action. It did not address, then, whether any tax misconduct occurred.

The trial court's determination was supported and within its discretion.

First, any harm to the State of California would not necessarily preclude Vichit from seeking quiet title relief from his family members. If " '[the wrongdoer] is not guilty of inequitable conduct *toward the defendant* in [the litigated] transaction, his hands are as clean as the court can require.' " (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 283 (*Brown*), italics added.) In *Brown*, any "unclean hands emanating from [a] Brown-Ross agreement did not directly affect or infect the relationship between Grimes and Brown and, most importantly, was not inequitable conduct towards Grimes." (*Ibid.*, citing *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 620 [" '[T]he misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved *and affect the equitable relations between the litigants,*' " (italics added)]; cf. *Republic Molding Corp. v. B. W. Photo Utils.* (9th Cir. 1963) 319 F.2d 347, 350 [a "wrong . . . upon the public" may be relevant to assessing whether unclean hands bars federal claims of false advertising to the public].)

Second, appellants did not assert the brothers' suffering of inequity below and have forfeited the matter. Regardless, Vichit's request to his family to be removed from tax documents was open and accepted. Unclean hands need not entirely defeat a

7

claim when the supposed victims knew of and freely consented to the supposed victimization. (See *Brown*, *supra*, 192 Cal.App.4th at pp. 283–284 ["Grimes knew of Ross's activities and that Ross was to be compensated, and Grimes knew about the 90/10 fee split between Ross and Brown before he received much of his compensation. He was not adversely affected by the nature of the Brown-Ross agreement"].) Additionally, if the tax scheme was fraudulent, other family members likely knew of it and arguably abetted it, and it would hardly be compulsory to give those family members relief through the equitable doctrine of unclean hands.

Third, the tax arrangement did not arise until the 2010 tax year, some three years distant from the alleged 2007 buyout and the even more distant acquisition of property rights. The tax arrangement, which the trial court viewed as not effecting or reflecting Vichit's ouster, could be reasonably seen, then, as distinct from the ownership issue at the heart of the litigation. Recall, appellants have not challenged the trial court's underlying finding that Vichit, apart from a potential unclean hands defense, retained ownership.

**B.**

Unclean hands also did not disqualify Somsak from seeking to quiet title.

As to Somsak, appellants' unclean hands theory arises from Somsak's wife, not Somsak, allegedly embezzling funds. The trial court did not specifically address Somsak and unclean hands in its proposed statement of decision, nor does it appear from the record that appellants asked the trial court to correct this omission. As a result, we imply all findings needed to support the rejection of unclean hands as to Somsak. (*Slone v. El Centro*

8

*Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1170–1171 (*Slone*).)

Somsak, through the marital community, might have exposure for debts of his wife. (Fam. Code, § 910, subd. (a) ["[T]he community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt"]; see *In re Marriage of Bell* (1996) 49 Cal.App.4th 300, 310 [when the community benefited, community was liable for one spouse's embezzlement despite other spouse's unawareness].) That does not necessarily mean, however, Somsak cannot also pursue the affirmative quiet title claim he raised here.

First, RT IV is Somsak's wife's creditor; the individual brothers who share ownership of the real properties at issue are not. RT IV, the trial court had found, was a distinct corporate entity, not a stand in for the siblings or a partnership. Somsak raises RT IV's distinct corporate existence and its lack of involvement with the real property at issue, but appellants offer no response.

Second, it is not inexorably so that unclean hands bars an innocent spouse's suit against a guilty spouse's creditor. Appellants cite no authority holding, and do not explain why, the unclean hands doctrine applies in that context. (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 503 [an appellant must " ' "disclose the reasoning by which the appellant reached the conclusions [appellant] wants us to adopt" ' "].) The trial court noted evidence that at least the Ransom properties were viewed as the brothers'

separate property.  Appellants do not address the appropriate characterization of the real property and any impact of that characterization on the availability of unclean hands against Somsak as an innocent spouse.  (Cf. Fam. Code, § 913, subd. (b)(1) [in general, "separate property of a married person is not liable for a debt incurred by the person's spouse before or during marriage"]; *id.*, subd. (b)(2) ["consent of a married person to an encumbrance of community estate property to secure payment of a debt incurred by the person's spouse does not subject the person's separate property to liability for the debt unless the person also incurred the debt"].)

Third, there is not only a mismatch between the creditor, RT IV, and appellants and a mismatch between Somsak and his wife, there is also a mismatch between the claimed embezzlement and the antecedent claim of ownership in the real properties. Whether an offset or separate cause of action might have succeeded are not the issues before us; the question, as appellants frame it, is whether Somsak is entirely barred from claiming an interest in the real properties.  Somsak's wife's embezzlement of restaurant proceeds from RT IV does not appear to "relate directly to the cause at issue" or " 'to the transaction' " in Somsak's quiet title action to establish real property ownership.  (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979; see also *Aguayo v. Amaro, supra,* 213 Cal.App.4th at p. 1110.)  "Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." (*Kendall-Jackson Winery,* at p. 979.)  On this issue of relatedness, appellants, yet again, do not provide reasoned discussion of authority to guide our review.  " 'We are not bound to develop appellants' arguments for them.' " (*United*

*Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

Finally, we reiterate that appellants chose to remain silent about Somsak's alleged unclean hands when raising other issues with the trial court's proposed decision.  Although the trial court found ample evidence substantiated appellants' claim of embezzlement of funds from RT IV, it made no definitive findings regarding whether embezzlement in fact occurred, the amount of any theft, whether any theft resulted in a community debt, whether the real property at issue was separate property of Somsak or community property, or whether any remediation might have occurred that would have put things right between the family members ahead of this quiet title action.  As noted, appellants' choice to not object regarding unclean hands and Somsak means we imply any findings the record can support to uphold the judgment.

Appellants' briefing has hampered our review in this regard.  First, appellants discuss the alleged embezzlement in cursory terms and do not tell us much about the rest of the lengthy trial proceedings that might have put the evidence of alleged embezzlement in context.  (*Slone*, *supra*, 106 Cal.App.5th at p. 1174 [a one-sided, incomplete recitation of facts does not permit a substantial evidence review on appeal].)  More than that, the record citations to the reporter's transcript are frequently inaccurate and do not point to the material claimed.  This hinders the court as well as other parties to the appeal.  (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 276–277.)  "The claimed existence of facts that are not supported by citations to pages in the appellate record, or not appropriately supported by citations, cannot be considered by this court."

(*Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 816, fn. 5.)

The trial court, in any event, did make findings adjacent to the embezzlement question that the record supports. When concluding Somsak had joint ownership of the real properties, the trial court found he had been fired only as an employee in response to the alleged embezzlement. It also found that Somsak had agreed to settle the 2016 court proceedings by relinquishing a claim to "sole ownership" of the Ransom properties in favor of joint ownership with his brothers. It otherwise noted evidence that Somsak disputed the nature of the embezzlement and did not agree to pay the asserted debt. These facts highlight the complex, fluid nature of how the family held assets, disagreed, reached compromises, and soldiered on. They do not indisputably support unclean hands.

Ultimately, appellants had the burden to provide and cite accurately to the trial record, make cogent legal arguments with citations to authority, and affirmatively show error. (*Slone*, *supra*, 106 Cal.App.5th 1160, 1172.) We cannot say appellants met their burden to overturn the trial court's rejection of unclean hands on what is a deferential standard of review.

### III.

We deny Vichit and Somsak's previously filed motion to dismiss the appeal.

## DISPOSITION

We affirm the judgment and award appellate costs to respondents.


SCHERB, J.

We concur:


STRATTON, P. J.


WILEY, J.